**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| CHAZZ ANDERSON<br>Plaintiff,<br>v.<br>COUNTY OF ESSEX; ESSEX COUNTY COLLEGE; ESSEX COUNTY COLLEGE POLICE DEPARTMENT; SERGEANT KEVIN A. PEEBLES; SERGEANT ANDREE D. QUOCKCO; INVESTIGATOR MICHAEL GILLENS; DIRECTOR JAMIL GRAHAM; JOHN DOES 1-10; AND ABC PUBLIC ENTITIES 1-10.<br>Defendants. | Civil Action No.: 25-17302<br><br>**OPINION & ORDER** |

**CECCHI, District Judge.**

This matter arises from the complaint of Plaintiff Chazz Anderson ("Plaintiff"), stemming from Plaintiff's arrest and subsequent prosecution after he was involved in an altercation at Essex County College. Plaintiff's claims are set forth in his first amended complaint (ECF No. 19-1 ("FAC")), in which he brings a 42 U.S.C. § 1983 suit alleging violations of the Fourth and Fourteenth Amendments to the United States Constitution. Defendants Essex County College ("ECC"), Sergeant Kevin A. Peebles ("Peebles"), Sergeant Andree D. Quockco ("Quockco"), Investigator Michael Gillens ("Gillens"),[1] and Director Jamil Graham ("Graham") (collectively, "College Defendants") now move for dismissal pursuant to Federal Rule of Civil Procedure

[1] Plaintiff names Defendant Gillens as "Lieutenant Michael Gillens" and asserts that he "held the rank of Lieutenant." FAC ¶ 9. In their Motion to Dismiss, Defendants contend that Defendant Gillens is not a Lieutenant with the Essex County Police Department and is instead an Investigator. Br. at 4 n.4. In Plaintiff's subsequent filings, he appears to concede this point and refers to Defendant Gillens as "Investigator Gillens." *See* Opp. at 3 ("Investigator Gillens conducted the questioning."). Since both parties appear to agree, this Court will therefore accept Defendants' contention that Defendant Gillens' appropriate title is "Investigator Gillens."

12(b)(6). ECF No. 21; *see also* ECF No. 21-1 ("Br."). Defendant County of Essex ("County Defendant") filed a separate motion to dismiss pursuant to Rule 12(b)(6), ECF No. 23-1 ("County Defendant Br."), and joined the College Defendants' motion to dismiss "due to similar issues." County Defendant Br. at 2. Plaintiff filed an opposition to both motions, ECF No. 27 ("Opp."), and the College Defendants replied. ECF No. 28 ("Reply"). The Court decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, both motions to dismiss are GRANTED.

## I. BACKGROUND[2]

### A. Factual History

This matter arises out of the circumstances surrounding Plaintiff's arrest and subsequent prosecution after an altercation at ECC on September 6, 2023. FAC ¶¶ 1-2. Plaintiff alleges that he became involved in an altercation with Amani Slade ("Slade") after she "loudly chastised" an unidentified man for bumping into her in a crowded elevator. *Id.* ¶¶ 3-8. Plaintiff asserts that he "attempted to disengage from Slade" and walked away after exiting the elevator, but that Slade followed him, taunted him, and recorded him on her phone. *Id.* ¶¶ 9-12. According to Plaintiff, he repeatedly tried to distance himself from Slade, but she continued to follow him. *Id.* ¶¶ 13-14.

After an ECC staff member intervened, Plaintiff proceeded to the ECC Financial Aid Office to check on an application. *Id.* ¶¶ 17-19. There, an unknown, uniformed officer requested Plaintiff's state identification, and Plaintiff complied. *Id.* ¶¶ 19-20. The officer then ordered Plaintiff to follow him. *Id.* ¶¶ 19-20. They proceeded to an investigative office, where Defendant

[2] For purposes of this motion to dismiss, the Court accepts the complaint's well-pled factual allegations as true, construes them in the light most favorable to the Plaintiff, and draws all reasonable inferences in Plaintiff's favor. *See Lutz v. Portfolio Recovery Assocs., LLC*, 49 F.4th 323, 328 (3d Cir. 2022).

Gillens interrogated Plaintiff about the altercation with Slade. *Id.* ¶ 21. Plaintiff contends that he repeatedly told Gillens that Slade was the aggressor. *Id*. According to Plaintiff, he urged Gillens to review security camera footage to corroborate his account of the incident, but Gillens repeatedly demanded that Plaintiff admit to Slade's version of events. *Id.* ¶ 25-27.

Plaintiff further alleges that Gillens left the interrogation room and stated to another individual, "I think he's Muslim, you know they don't respect women." *Id.* ¶ 29. He also asserts that his friend tried to speak with Gillens about Plaintiff's detention, but Gillens was "confrontational and verbally aggressive" and "slammed the door in [his friend's] face." *Id.* ¶ 30.

After Gillens returned to the interrogation room, he was joined by Defendant Graham, who allegedly "endorsed and repeated the allegations against Plaintiff" and "pressured Plaintiff to admit conduct he denied." *Id.* ¶ 34. According to Plaintiff, Gillens "became frustrated with [Plaintiff's] insistence of maintaining his innocence and threatened to arrest him." *Id.* ¶ 38. Gillens allegedly grabbed Plaintiff's arm and ordered that Plaintiff be detained. *Id.* ¶¶ 39-41. Plaintiff was then "taken to the Public Safety Office . . . where he was fingerprinted, photographed, handcuffed, and chained to a bench for over an hour." *Id.* ¶ 41. During this time, Plaintiff alleges that Gillens told his mother, "your son is being arrested because he doesn't respect women." *Id.* ¶ 42.

Plaintiff avers that Defendant Peebles completed the ECCPD "Incident Report" "based solely on Slade's account of events," and Defendant Quocko approved the report. *Id.* ¶ 44-45. He further alleges that the report failed to identify any witnesses, and that the report did not indicate whether cameras were visible, "despite cameras being present in both the elevator and adjoining corridors." *Id.* ¶¶ 46-48. He also claims that there is "no record" that the video footage from the cameras was ever reviewed by ECCPD, nor is there a record that witnesses were interviewed. *Id.* ¶¶ 49-51.

Following his arrest, Plaintiff alleges that Defendants brought a complaint against him in Newark Municipal Court pursuant to 2C:33-4A (harassment communication in manner to cause alarm). *Id.* ¶ 52. Plaintiff alleges that Defendants "falsified" the Preliminary Law Enforcement Incident Report because the Report indicated that he made "statements/admissions," *Id.* ¶¶ 55-56. Similarly, he alleges that the Affidavit of Probable Cause and charging paperwork "expressly relied on a purported 'Defendant Admission.'" *Id.* ¶ 57. However, Plaintiff maintains that he never made any admissions. *Id.* ¶¶ 55-57.

Plaintiff appeared in Newark Municipal Court on November 8, 2023, and the charges against him were dismissed for lack of prosecution. *Id.* ¶ 66. Plaintiff alleges that he "suffered significant emotional distress and reputational harm resulting from the false report made by Slade and the resulting faulty investigation and malicious prosecution by Defendant Officers and ECC." *Id.* ¶ 67. Plaintiff also alleges that he attempted to re-enroll in classes after the charges were dismissed against him, but that "Defendants had placed and maintained an administrative 'Dean's Hold' on his student account, preventing him from registering for classes." *Id.* ¶ 68. Further, Plaintiff alleges that on November 26, 2025, he was approached by ECC security guards while waiting for his girlfriend to finish class, and the guards demanded to see his student identification. *Id.* ¶ 73. "To avoid escalation," Plaintiff chose to wait outside, and he "now refrains from entering campus due to fear of further targeting, escalation, or mischaracterization of his conduct." *Id.* ¶ 76. Following his arrest, Plaintiff "has been prescribed Sertraline 50mg antidepressant tablets," allegedly to "deal with the resulting mental harm" of the experience. *Id.* ¶ 77.

**B. <u>Procedural History</u>**

Plaintiff filed an initial complaint on November 7, 2025, ECF No. 1, and he filed an amended complaint four days later. ECF No. 3. College Defendants filed a Motion to Dismiss on

December 18, 2025. ECF No. 13. In lieu of a response to Defendants' motion, and prior to any decision by this Court on the motion, Plaintiff filed his FAC on February 6, 2026, and Defendants' motion to dismiss was administratively terminated as moot. ECF Nos. 19, 20. In the FAC, Plaintiff brought claims against the County of Essex; Essex County College; Sergeant Kevin A. Peebles; Sergeant Andree D. Quocko; Investigator Michael Gillens; and Director Jamil Graham. FAC ¶¶ 7-12. All individual defendants are sued in their individual and official capacities. FAC ¶¶ 9-12. In addition, Plaintiff named two fictious defendants: 1) John Does 1-10, who are police officers and/or ECC employees unknown at this time; and 2) ABC Public Entities 1-10, which are public entities unknown at this time. FAC ¶¶ 13-14.

In his FAC, Plaintiff asserts three counts: 1) malicious prosecution, in violation of the Fourth and Fourteenth Amendments, against the individual defendants; 2) fabricated evidence/use of false evidence, in violation of the Fourteenth Amendment and/or the Fourth Amendment, against the individual defendants; and 3) municipal liability for policies, custom, and failure to train that resulted in the allegedly illegal conduct, against ECC and the County Defendant. FAC ¶¶ 79-110.

On February 21, 2026, the College Defendants filed a motion to dismiss pursuant to FRCP 12(b)(6), ECF No. 21, and the County Defendant filed its own motion to dismiss pursuant to FRCP 12(b)(6) on February 25, 2026. ECF No. 23. Plaintiff filed a brief in opposition to the motions to dismiss, *see* ECF No. 27.

## II. <u>LEGAL STANDARD</u>

To survive dismissal under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). A claim is facially plausible when supported

by "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A complaint that contains "a formulaic recitation of the elements of a cause of action" supported by mere conclusory statements or offers "'naked assertion[s]' devoid of 'further factual enhancement'" will not suffice. *Id.* (citation omitted). In evaluating the sufficiency of a complaint, the court accepts all factual allegations as true, draws all reasonable inferences in favor of the non-moving party, and disregards legal conclusions. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231–34 (3d Cir. 2008).

## III. DISCUSSION

### A. Counts 1 and 2: Impermissible Group Pleading

Defendants correctly argue that the FAC employs impermissible group pleading as to counts 1 and 2. Br. at 17-18.[3] Group pleading occurs when a plaintiff "refer[s] to Defendants collectively and without addressing each Defendants' alleged actions individually," *Y.V. by Krasny v. N.J. Dep't of Child. and Fams.*, No. 21-18770, 2022 WL 2347169, at *6 n.7 (D.N.J. June 29, 2022), and "[c]ourts in this district routinely dismiss complaints when the complaints contain improper group pleading." *JD Glob. Sales, Inc. v. Jem D Int'l Partners*, LP, No. 21-19943, 2023 WL 4558885, at *7 (D.N.J. July 17, 2023) (internal quotation omitted). Group pleading is improper when it makes the complaint "impermissibly vague . . . forcing both the defendants and the Court

[3] As an initial matter, Defendants argue, and this Court agrees, that Plaintiff failed to sufficiently address the group pleading arguments in their Opposition. *See* Reply at 1-2. The Court notes that ordinarily, "[f]ailure to raise legal arguments in opposition to a motion to dismiss results in waiver." *Pers. v. Teamsters Loc. Union 863,* No. 12-2293, 2013 WL 5676802, at *2 (D.N.J. Oct. 17, 2013) (citing *Milner v. Bayada Nurses, Inc.,* No. 05–3164 2006 WL 231993 (D.N.J. Jan. 30, 2006) (citing *Farnham v. Windle,* 918 F.2d 47, 51 (7th Cir. 1990); *Hollister v. U.S. Postal Service,* 142 F. App'x 576, 577 (3d Cir. 2005)); *see also Ankele v. Hambrick*, 286 F. Supp. 2d 485, 496 (E.D. Pa. 2003), *aff'd*, 136 F. App'x 551 (3d Cir. 2005) ("Plaintiff makes no response to this argument, and thus has waived his opportunity to contest it."). Nevertheless, the Court will address the merits of Defendants' group pleading argument.

to guess who did what to whom when." *Craft v. BMW of N. Am., LLC*, No. 24-6826, 2024 WL 5197080, at *3 (D.N.J. Dec. 23, 2024); *see also Nelson v. Claussen*, No. 23-1896, 2024 WL 4249730, at *6 (D.N.J. Sept. 20, 2024) ("A complaint cannot indiscriminately attribute wrongdoing to a group of defendants, leaving them to guess as to who allegedly did what") (internal quotation omitted). "Group pleading is particularly problematic when 'a complaint names' many defendants 'who occupied different positions and had distinct roles in the alleged misconduct'" because "[i]n those circumstances, group pleading fails to put defendants and the court on notice as to who is allegedly responsible for what action . . . and thus violates Rule 8(a)." *Bair v. Snyder*, No. 26-00102, 2026 WL 2446394, at *2 (M.D. Pa. Aug. 20, 2026) (quoting *Al Ummah Cmty. Ctr. v. Teaneck*, No. 20-14181, 2022 WL 16948812, at *9 (D.N.J. Nov. 15, 2022)).

In counts 1 and 2 of the FAC, Plaintiff relies on impermissible group pleading because he "refer[s] to the actions of Defendant[s] generally, and [does] not otherwise provide enough information to satisfy Rule 8." *Chamblin Grp. Real Est. Ventures LLC v. Pina*, No. 23-22655, 2025 WL 1135223, at *3 (D.N.J. Apr. 16, 2025). Although Plaintiff specifies that counts 1 and 2 are against "the individual Defendants," *see* FAC at 13-15, the substance of the allegations in the counts fails to adequately specify how each individual Defendant was involved in the conduct alleged. In count 1, for example, Plaintiff alleges that "Defendants initiated a criminal proceeding by filing Complaint-Summons No. 0714-S-2023-011660, charging Plaintiff under N.J.S.A. 2C:33-4a and by swearing to an affidavit of probable cause"; "Defendants inserted and relied on a false 'defendant admission as a basis for probable cause'"; and "Defendants failed to interview readily available witnesses . . . and refused to review readily available surveillance video." FAC ¶¶ 80, 82. Similarly, in count 2, Plaintiff alleges that "Defendants fabricated evidence by falsely asserting that Plaintiff made 'statements/admissions' and by swearing in charging documents that probable

cause existed"; and "Defendants acted knowingly or with reckless disregard for the truth because: a. they were present for the interrogation; b. they documented an 'admission' that never occurred, and c. despite indicating the evidence was recorded, they have never produced any recording or other evidence of such admission." FAC ¶¶ 91; 94. However, Plaintiff does not adequately assert which specific Defendants were involved in the decision not to interview readily available witnesses; which Defendants falsely asserted that Plaintiff made an admission; nor which Defendants were involved in the failure to produce recordings or evidence of such admissions. Plaintiff therefore fails to identify how each defendant satisfied the elements of either count, thus failing to put Defendants on notice of the charges against them.

Moreover, the factual allegations in the body of the complaint similarly lack the specificity required to put Defendants on notice. For example, Plaintiff alleges that "Defendant Officers relied solely on Slade's internally contradictory and baseless allegations;" "Defendants rely in their 'Affidavit of Probable Cause,' on fictitious and falsified information;" and "Defendants falsified the Preliminary Law Enforcement Incident Report," without specifying which particular Defendants were involved in those activities and how. FAC ¶¶ 47; 53; 55. However, Defendants "occupied different positions and had distinct roles in the alleged misconduct"—indeed, it appears that each Defendant played a distinct role in interrogating Plaintiff and drafting the subsequent incident report, and numerous Defendants were not present during the interrogation. *Bair,* 2026 WL 2446394, at *2 (quoting *Al Ummah Cmty. Ctr.* 2022 WL 16948812, at *9); *see* FAC ¶¶ 22-45. Even more concerningly, Plaintiff groups Defendant Graham with the other Defendants, making it difficult to determine whether he is alleging that Graham, who is not a law enforcement officer, played a role in preparing or approving the affidavit of probable cause. Accordingly, this

form of generalized pleading is "particularly problematic" for purposes of satisfying Rule 8. *Bair*, 2026 WL 2446394, at *2 (quoting *Al Ummah Cmty. Ctr.,* 2022 WL 16948812, at *9).

To the extent that certain factual allegations in the Complaint do allege specific activity by specific defendants, "Plaintiff[] do[es] not connect these more specific allegations within the factual portion of [his] complaint to the asserted counts of the complaint" *Chamblin*, 2025 WL 1135223, at *3. *See also Falat v. Cnty. of Hunterdon*, No. 12-6804, 2013 WL 1163751, at *3 (D.N.J. Mar. 19, 2013). For example, Plaintiff alleges that Defendant Peebles completed the ECCPD "Incident Report"; Defendant Quocko approved the report; and Defendants Gillens and Peebles brought the Complaint against him. ECF Nos. 44-48. However, he fails to adequately allege each Defendant's individual responsibility in allegedly fabricating his admission, knowingly relying on a false admission, or failing to conduct further investigation—allegations required to give rise to liability as to both counts 1 and 2. And Plaintiff's vague allegations regarding individual Defendants' involvement in paragraphs 85 and 96 of the complaint do not cure this deficiency. Generalized assertions that, for example, Gillens was involved in "interrogation, biased statements, refusal to review video, threats, detention order, and discriminatory remarks" or that Graham "participated in interrogation/discipline," FAC ¶¶ 82, leave both the Defendants and the Court to "guess who did what to whom when," *Craft,* 2024 WL 5197080, at *3, and does not allow Defendants to "glean what it is that [they] supposedly did that would create liability." *Forero v. APM Terminals*, No. 18-13754, 2019 WL 6168031, at *5 (D.N.J. Nov. 19, 2019). Instead, the pleading "improperly leaves it for the Court and the defendants to determine which factual allegations within the . . . complaint supports which legal conclusion from the asserted counts." *Chamblin*, 2025 WL 1135223, at *3. But "[i]t is not the Court's job to laboriously search the Complaint for factual assertions that could, in theory, be used to support

one legal claim or another." *K.J. v. Greater Egg Harbor Reg'l High Sch. Dist. Bd. of Educ.*, No. 14-145, 2015 WL 5039460, at *6 (D.N.J. Aug. 26, 2015) (internal quotation omitted). Accordingly, in their current form, counts 1 and 2 constitute impermissible group pleading and must be dismissed.[4]

**B. Count 3: *Monell* Liability**

In addition to his § 1983 claims against the individual defendants for malicious prosecution and fabrication of evidence, Plaintiff also alleges that Defendants County of Essex and Essex County College are "liable under 42 U.S.C. § 1983 for policies, practices, and failures to train and supervise that resulted in biased investigations, fabrication of evidence, unlawful prosecutions, and post-dismissal enforcement actions." FAC ¶ 99. However, neither Plaintiff's policy/custom claim, nor his failure to train claim, were adequately pled in the FAC.

It is well-established that a local government may only be liable when its "policy or custom, whether made by its lawmakers or by those whose edicts or acts may be fairly said to represent official policy, inflicts the injury." *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 694 (1978). To satisfy the pleading standard, a plaintiff raising a policy or custom claim must "identify a custom or policy and specify what exactly that custom or policy was." *McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009). *See also Est. of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019). Importantly, "[p]roof of a single instance of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an

---

[4] Defendants also argue that Plaintiff failed to allege sufficient facts that would give rise to violations of law under either claim, as well as that the existence of probable cause defeats Plaintiff's section 1983 claims. Br. at 13-17. Because this Court will dismiss counts 1 and 2 due to impermissible group pleading, it need not reach those arguments. Moreover, it will not reach Plaintiff's unprompted rebuttal to a qualified immunity argument that Defendants never raised. *See* Opp. at 20-24

existing, unconstitutional municipal policy." *City of Okla. City v. Tuttle*, 471 U.S. 808, 820 (1985); *see also Fletcher v. O'Donnell*, 867 F.2d 791, 793 (3d Cir. 1989).

Here, Plaintiff fails to establish a policy or custom claim because "[Plaintiff] pleaded no facts to support the existence of any policy, custom, or practice beyond those involving [his interactions]." *Phillips v. Northampton Cnty.*, 687 Fed. App'x 129, 132 (3d Cir. 2017); *see also Geissler v. City of Atlantic City*, 198 F. Supp. 3d 389, 396 (D.N.J. 2016). Plaintiff's allegation that "Defendants County of Essex and Essex County College, are liable for creating, implementing and enforcing policies, practices and customs . . . which resulted in the malicious prosecution of Plaintiff," without further factual enhancement, is precisely the type of conclusory allegation that cannot survive a motion to dismiss. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009); *see also Iqbal*, 556 U.S. at 678 ("A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do."). Since Plaintiff's claims of allegedly unconstitutional behavior stem from a single instance and do not specify a broader policy causing that behavior, they must fail. *See Santiago v. Warminster Twp.*, 629 F.3d 121, 135 (3d Cir. 2010) (affirming dismissal of claims against a municipality because the amended complaint failed to identify what action a municipal official took "that could fairly be said to be policy.").

Plaintiff's argument that Defendants Essex County and ECC are liable for their failure to train their employees fares no better. "Under certain circumstances, a municipality's failure to properly train its employees and officers can amount to a 'custom' that will trigger liability under § 1983." *Gardner v. N.J. St. Police*, No. 15-8982, 2017 2955348, at *3 (D.N.J. July 11, 2017) (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). Although a failure to train claim does not require that a plaintiff allege an unconstitutional policy, Plaintiff must allege that the municipality's failure to train "amounts to deliberate indifference to the rights of persons" with

whom the municipality's officers come into contact. *Roman*, 914 F.3d at 798 (quoting *Canton*, 489 U.S. at 388 (internal quotation marks omitted).[5] Ordinarily, such a claim requires a plaintiff to plead factual allegations "indicating a pattern of allegedly similar constitutional violations." *Glaesener v. City of Jersey City*, No. 19-18089, 2021 WL 4206297, at *8 (D.N.J. Sept. 15, 2021); s*ee also Connick v. Thompson*, 563 U.S. 51, 62 (2011) ("Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights.").

Here, Plaintiff does not allege a pattern of similar constitutional violations. Instead, he relies on his singular experience as evidence of Defendants' inadequate training. *See* FAC ¶ 103 ("As demonstrated by the events involving Plaintiff, Defendants failed to adequately train and supervise ECCPD officers and campus administrators."). In fact, Plaintiff does not point to a single other incident of unlawful conduct by Defendants or plead any factual allegations regarding the specific training programs undertaken by Defendants. In short, Plaintiff never alleges that Defendants were on notice that their training programs were deficient, so he has not plausibly pled that Defendants were deliberately indifferent in their failure to train. *See Kilgarriff v. Strunk*, No. 18-10120, 2019 WL 1434763, at *5 (D.N.J. Mar. 31, 2019) (dismissing failure to train and failure to supervise claims against municipality, despite conclusory allegation that the municipality was aware of constitutional violations, because plaintiff provided only one example of a constitutional violation and thus did not "provide a factual underpinning to [p]laintiff's claims of a city-wide

[5] "A plaintiff sufficiently pleads deliberate indifference by showing that '(1) municipal policymakers know that employees will confront a particular situation [,] (2) the situation involves a difficult choice or a history of employees mishandling [,] and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights.'" *Roman*, 914 F.3d at 798 (quoting *Doe v. Luzerne County*, 660 F.3d 169, 180 (3d Cir. 2011) (internal quotation marks omitted) (quoting *Carter v. City of Philadelphia*, 181 F.3d 339, 357 (3d Cir. 1999)).

policy, custom, or training failure that proximately caused [p]laintiff's injuries"); *see also Reed v. Jersey City,* No. 21-3921, 2022 WL 1664621 at *7 (D.N.J. May 24, 2022 ) (dismissing failure to train claims against municipality because Plaintiff "does not identify any custom or policy related to negligent training, and he also does not establish any facts to establish that Jersey City acted with deliberate indifference"); *O'Neal v. Middletown Twp. et al*., No. 18-5269, 2019 WL 77066, at *6 (D.N.J. Jan. 2, 2019) (same). Because Plaintiff failed to state a claim for municipal liability under either a policy/custom theory or a failure to train theory, count 3 must be dismissed.[6]

## IV. CONCLUSION

Accordingly, for the reasons stated above, **IT IS** on this 24th day of September, 2026;

**ORDERED** that the College Defendants' Motion to Dismiss, ECF No. 21, is **GRANTED** without prejudice; it is further

**ORDERED** that the County Defendant's Motion to Dismiss, ECF No. 23, is **GRANTED** without prejudice;[7] and it is further

**ORDERED** that Plaintiff shall have thirty (30) days from entry of this Opinion and Order to submit an amended complaint that addresses the deficiencies identified in this Opinion and Order. Insofar as Plaintiff submits a further amended complaint, he shall also provide a form of

[6] Defendants also argue that Plaintiff's *Monell* liability claim is time-barred. Br. at 11-13. Because the Complaint fails to state a claim for *Monell* liability, the Court need not reach the statute of limitations argument.

[7] County Defendant's separate motion to dismiss repeats the pleading standard for *Monell* liability and argues that there are "no specific allegations against the County of Essex in this complaint" and that the matter "involves the Essex County College rather than the County of Essex." ECF No. 23-1 at 2-3. The County Defendant also indicates that it "joins defendant Essex County College, et al.'s motion to dismiss due to similar issues." *Id.* at 3. In granting the County Defendant's motion to dismiss, therefore, this Court adopts the same reasoning laid out in Section III.B. of this decision (finding that Plaintiff failed to allege that either the County of Essex or Essex County College was liable under *Monell* on either a policy/custom theory or a failure to train theory).

the amended complaint that indicates in what respect it differs from the current complaint, by bracketing or striking through materials to be deleted and underlining materials to be added. *See* L. Civ. R. 15(a)(2).

**SO ORDERED.**

*/s/ Claire C. Cecchi*
**CLAIRE C. CECCHI, U.S.D.J.**